## CONTRACTS WITH TAX INQUISITORS AS TO FUTURE OMISSIONS OF PROPERTY.

[Superior Court of Cincinnati, General Term.]

THE STATE, EX REL WILSON, v. EUGENE L. LEWIS ET AL.[*]

Decided October 4, 1905.

*Tax Inquisitors—Validity of Contract with—Relating to Future Omissions of Property—Duties of County Auditor—Construction of Sections 1343-1 to 1343-4—Collusion of Officers—Public Policy.*

1. The sections of the statutes relating to the placing on the tax duplicate of property improperly omitted therefrom, and the employment of tax inquisitors, etc., do not require of the county auditor as a part of the duties of his office that he shall make search for such omissions; and a necessity existed for the employment of a tax inquisitor for the performance of that work, at the time the contract in issue in this case was entered into, in September, 1902.

2. The phrase "any omissions of property," found in Section 1343-1 was intended to mean all omissions, past, present and future, and the claim that this law does not authorize contracts with tax inquisitors which have a prospective operation is not tenable.

FERRIS, J.; HOFFHEIMER, J., concurs; HOSEA, J., dissents.

This case has appeared in various forms before the general term of this court, and upon the demurrer filed to the petition disposition of the matter was made on the 27th day of April 1904, in the following language:

"All the questions presented in this case have been adjudicated by us in *State, ex rel McGoldrick*, v. *Lewis*, 12 Decisions page 46; and we are still content with that decision. It follows therefore, that the demurrer herein filed must be sustained."

The cause was then remanded to special term and permission granted to the plaintiff to amend his petition.

Our attention is drawn by counsel for the plaintiff to the fact that the court expressly passed upon certain allgations in the petition, one of which alleges that the defendant officer authorized and permitted the inquisitor to furnish information

---

* Majority opinion reversed and minority opinion affirmed—74 Ohio State, ——.

as to the taxation of property improperly omitted subsequent to the date of the contract of September 17, 1902; and that a proper interpretation of the contract would deny payment for services in furnishing information as to taxable property omitted from the tax duplicate subsequent to September 17, 1902.

Section 1343-1, contains the provision that—

"Certain county officers, when they have reason to believe that there has not been a full return of property within the county for taxation, shall have power to employ any person to make inquiry and furnish to the county auditor the facts as to *any* omission of property for taxation," etc.

It is contended that the words in this section, *"has not been"* limit contracts made under this provision to the payment of services relating to *past* omissions. A reading of this section does not reveal an intention to limit or confine the activities of the inquisitor by expressed limitation to omissions already made; in other words, to past events. The language of the act gives to the special tribunal, authority to contract "when they have reason to believe", but nowhere expressly states the time when such action is to be taken, nor to what situation or condition such act shall apply; but the act is explicit in saying that when justified in the belief that there has not been a full return of property within the county for taxation, that "they may employ any person to make inquiry and furnish the county auditor facts as to *any* omissions of property for taxation; and the evidence necessary to authorize him to subject to taxation any property improperly omitted from the tax duplicate." This language is clear in defining the nature of the contract of employment, and words of broader meaning could scarcely be employed to indicate the extent of the examination thus to be made, the object of which plainly is to secure the collection of public taxes, and must be as broadly construed for the accomplishment of the purpose as follows the rule in the construction of remedial statutes. And when the design and purpose of the act is borne in mind and the conditions to be covered by the statute, and the relief to be afforded by proper application of the rule, it would seem that no narrow construction should be given to the act,

· the effect of which might be the defeat of the very object had in the passage of the act.

We pass over the suggestion of collusion between the officers, as furnishing no proper basis for the narrow construction requested.

A proper translation of Section 1343-2 would seem to answer, in a conclusive way, the argument made against the limitation of the contract to past transactions only. In view of the provisions of the last section quoted, the legislative mind would scarcely have used the expression "*any omissions,*" as barring therefrom *future* omissions designedly brought about by the collusion of the auditor and the inquisitor.

We think there is no question, therefore, that the term "*any* omissions" was intended to include *all* omissions, *past, present* and *future,* as was plainly the intention of the original act (85 O. L., 170) entitled "An act to secure a fuller and better return of property for taxation, and to *prevent* omissions of property from the tax duplicate."

This view is further sustained by the history of the legislation on this subject, and the evolution that began with the act of April 14, 1880 (77 O. L., 205), law of April 14, 1885 (82 O. L., 152), and the act of April 10, 1888 (85 O. L., 170), wherein the language first employed limited the employment to "any omissions occurring previous to the passage of this act," while the last expression of the Legislature now under consideration extends the employment to "*any* omissions," etc. The reason at the foundation of the construction here given, is fully set forth in the Crites case in 48 O. S., 142.        . .

Our attention has been drawn to the following language:

"That said contract is invalid because under the laws of Ohio it is made the duty of the County Auditor of Hamilton County to ascertain the facts and evidence necessary to authorize him to subject to taxation any property improperly omitted from the tax lists and duplicates of Hamilton county, and to place such omitted property upon the tax lists and duplicates; that the payment to said Henry W. Morgenthaler of any money under said contract for the discharge of such duty would be a misapplication of the public money of Hamilton county, Ohio."

This necessitates an examination of the statutory duties of the auditor in relation to omitted taxable property, as such duties are set forth in Sections 2781, 2781*a* and 2782, as well as Section 6044 relating to such property as is set forth in an inventory required by administrators and executors.

An examination of Section 2782 does not, in our judgment, justify the conclusion that it is made the duty of the auditor to make a search for facts and evidence necessary to enable him to add omitted property to the duplicate. And even though that contention or construction be wrong, we are unable to see the force of the objection made under the charge. Section 2782 provides, as a duty of the county auditor, when he has reason to believe, or is informed, that one has given a false return to the assessor, or has omitted taxable items, or has made an erroneous return of his property, that the auditor shall correct the return, and, in so doing, he is *authorized and empowered* to issue compulsory process, but there is nothing in this language *compelling* the auditor to institute such examination. He is obligated to act only when he has reason to believe or is informed that there is a false return, and when informed or having reason to believe, is *authorized* and *empowered,* but not *commanded,* to issue process for witnesses. Under the contract it is the inquisitor's duty to secure evidence, to appear before the auditor and present such facts to him, for the purpose of carrying into effect the plain objects of such contract, a reading of which leaves no doubt that it becomes the duty of the inquisitor to make search for it, to obtain and investigate the necessary facts and evidence, and present the same to the auditor, who, at such time, would have reason to believe and would be informed as to his duties in the premises. 58 Northeastern Reporter, 260, an Indiana case, furnishes what we believe to be sound reason as applied to this condition.

We do not believe, therefore, that, under these sections properly construed, the auditor is required to make search as part of the duty of his office. And, therefore, we are of the opinion that the contract does not cover duties required of the auditor

in this behalf; and that, therefore, there was a necessity for the employment complained of.

In this view of the case, it does not seem necessary to pass upon the other objections made to this fourth issue.

Demurrer to the amended petition is, therefore, sustained.

*Theodore Horstman,* for plaintiff in error.

*Alfred B. Benedict,* for defendants in error.

## DISSENTING OPINION.

HOSEA, J.

The question here is whether the contract made by the county officers with Morgenthaler as "tax inquisitor," under Revised Statutes, Sections 1343-1 to 1343-4, on September 17, 1902, is valid as a contract relating to tax omissions occurring in returns subsequent to its date; in other words, whether said law authorizes contracts having a prospective operation.

Various other questions arising upon this or a similar contract with Morgenthaler were disposed of by this court in *McGoldrick* v. *Lewis,* 12 O. D., 46, but upon a suggestion *arguendo* the court declined to pass upon the question because not raised by the pleadings.

From the majority opinion in the present case, holding that such contracts may have a prospective operation, I am constrained, notwithstanding my high respect for the views of my associates on the bench, to dissent, first, because the language of the statute seems to me to preclude such view; and, second, because, if the language were susceptible of the construction indicated, the general policy of the law is against it.

The language of the statute is as follows:

"(1343—1). [Authorizing employment of tax inquisitors; their compensation.] The county commissioners, county auditor, and county treasurer, or a majority of said officers in any county, *when they have reason to believe that there has not been a full return of property within the county for taxation,* shall have power to employ any person to make inquiry and furnish the county auditor the facts as to any omissions of property for taxation and the evidence necessary to authorize him to subject

to taxation any property improperly omitted from the tax duplicate, etc.''

(1)  As the power to make such contract is wholly derived from statute, the conditions and limitations of the power specified in the statute must be given effect.  The subject matter with reference to which the power is given in this instance is defined in the opening sentence of the act stating a contingency which is the condition precedent to the exercise of the power, namely, ''When they have reason to believe *that there has not been a full return* of property within the county for taxation, they shall have power to employ any person to make inquiry,'' etc.

This language has obvious reference to an existing condition growing out of a past fact, namely a condition arising upon one of the annual returns required by law, previously made.

The common canons of construction require us to refer all relative words and expressions, that follow later in the sentence, back to this dominant subject matter, namely, to the certain specific return, made under the law, which the designated officers have reason to believe is not full and complete.  So that the subsequent words, *''any omissions''* and *''any property improperly omitted,''* refer to omissions existing in the return already made; and there seems to me no warrant in the language of the act for any other interpretation.

(2)  In tracing the history of the statute, I find nothing to suggest any intention of the Legislature to extend the power of contracting to possible future omissions.  The original statute of 1880 (77 O. L., 205) confined its operation to omissions occurring prior to the passage of the act.  In the special act of 1885, relating to Hamilton county (82 O. L., 152), the language is, ''any property improperly omitted,'' which is a common mode of expressing an existing condition, and does not refer to a future possibility.  In the present act, passed in 1888 (85 O. L., 170), the limitation is still more specific by stating a condition precedent, namely, ''when they have reason to believe that there *has not been* a full return,'' etc., which necessarily relates to a past event constituting an existing condition with sole reference to which the power is granted.

(3)   Neither do I find in the opinions of the courts upon analogous statutes any support for the enlargement of the present statute by construction.

A question very similar to the present one arose before me in the case of *The State, ex rel,* v. *Gibson,* under the statute authorizing employment of a private individual to assist the treasurer in the collection of delinquent and forfeited taxes.   This court held that the contract must be confined strictly to past forfeitures which was affirmed by the higher courts.   *State* v. *Gibson, Court Index,* July 23, 1903; affirmed in General Term, 1 N. P.—N. S., 565; affirmed by Supreme Court, 70 O. St., 424.

A clearly analogous case is that of *Commissioners* v. *Arnold,* 65 O. St., 479, based upon the statute authorizing employment of assistants in the collection of delinquent chattel taxes.   The Supreme Court lay stress upon observance of statutory conditions, and incidentally lay down a principle having a pertinent application to the present case.   In the opinion it is said: ·

"Statutes enacted for the protection of the public revenues are, usually, not merely directory, but mandatory.   *   *   * Each delinquent list must be read, and an employment made to collect the same; but there can be no employment of collectors to collect future lists.   *The employment of such collectors can not be turned into an office to be held to the end of the treasurer's term, or for any definite period.*   His employment is to collect the delinquent list which has been read, or some part thereof, and when that is done his employment ends."

While the opinion is, perhaps, confined to a discussion of the particular law, yet it is impossible to read its clear and forcible language without feeling that beyond its particular application, the court is stating in effect a rule of public policy inconsistent with any enlargement of such powers by construction to include future contingencies, and the clear intimation is that such construction would create an office auxiliary to that of the elective office, for the performance of duties with which the office is charged by general laws.

(4)   The foregoing conditions suggest a broader view involving questions of a general public policy.

There can be no question as to the general purpose of our system under which all duties of a public character are assigned

to only elected public officers.  In the matter of taxation, the citizen is required, under suitable penalties, to return his property for taxation, to assessors who have power to correct returns and supply omissions, as to which the auditor has full power of investigation.  The auditor is also given a special compensation to bring omitted property upon the duplicate.

I do not concede that the duties of the auditor are perfunctory or merely clerical.  In *Probasco* v. *Raine, Auditor*, 50 O. St., 378, the Supreme Court has spoken upon this subject as follows (391):

"To have equality in taxation all property must be brought upon the duplicate.  Some officer must be authorized and empowered to cause all property to be listed for taxation.  Such officer must be paid for his services either by fees or salary.  The Legislature has full power under the Constitution to say what officer shall perform such duties and in what manner he shall be paid.  It has enacted that such duties shall be performed by the auditor, and that he shall be paid as provided in Section 1071," etc.

Contracts of the nature here in question find their justification in the increased complexity and amount of modern business interests and investments and the facilities thereby afforded for escaping taxation; and, so far as they are confined to residual matters which the ordinary public officers have failed to reach and accomplish, after diligent efforts made in good faith to discharge their official duties in the premises, the employment of private assistance is proper and reasonable.  Such seems to have been the view of courts in passing upon analogous contracts; but they have confined them strictly to such residual matters.  To go further and enlarge the power to include future contingencies, opens up a door to obvious evils that a correct public policy must avoid.  It is a step backward in the direction of farming out the collection of the public revenues to private interests, that history warns us against; and I find no authority in this case for supposing that it was the intention of the Legislature to take this step.

For the reasons given, I think the demurrers should be overruled.